UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-22607-CIV-TORRES

CONSENT CASE

MARLITE, INC.,

    Plaintiff,

v.

ALVIN ECKENROD, and
MODULAR WOOD SYSTEMS,
INC.,

    Defendants.
_____/

**ORDER ON MOTIONS FOR ATTORNEYS' FEES AND EXPENSES**

This matter is before the Court on pending post-trial motions filed by Plaintiff Marlite, Inc. ("Marlite") for attorneys' fees and expenses incurred in the prosecution of the action that resulted in a judgment against the Defendants in varying amounts. [D.E. 217, 234, 237]. Having reviewed these motions, Defendants' responses thereto, the original and supplemental bill of costs filed together with the motions, as well as the entire record, the motions will be Granted in Part and Denied in Part as set forth below.

## *I.   BACKGROUND*

This action stems from alleged breaches of various agreements and restrictive covenants between Marlite and Defendants Modular Wood Systems, Inc. ("Modular")

and Alvin Eckenrod ("Eckenrod") (collectively, "Defendants").  In January 2006, Marlite acquired Precision Wood Products, Inc., a slatwall business, from Eckenrod and three other shareholders.  Both Marlite and Modular now design, engineer, and manufacture wall panel systems.  They are direct competitors in the slatwall business.  Eckenrod is president of Modular.

In 2009, Eckenrod allegedly breached a non-competition agreement entered into with Marlite in the Precision transaction that prevented Eckenrod from hiring or soliciting the employment of America Canas, a former sales employee at Precision and then Marlite.  Eckenrod's actions, as President of Modular, also purportedly breached a contractual provision in the purchase agreement with Marlite, and further gave rise to tort liability against Modular for misappropriation of trade secrets and tortious interference, for the damages caused Marlite by the hiring and employment of Ms. Canas in 2009 until she was terminated by Modular.

Marlite sued Modular for breach of contract; misappropriation of trade secrets; tortious interference with business relations; and tortious interference with contract. Marlite also sued Eckenrod for breach of contract.  In response, Modular filed a counterclaim against Marlite for breach of a confidentiality agreement.  Prior to trial, the Honorable Donald L. Graham (who was presiding over the case at the time) granted summary judgment for Marlite on the breach of contract claim against Eckenrod. [D.E. 145].

The Court held a jury trial from June 21 through July 1, 2010.  The jury returned verdicts for Marlite on two of the three counts against Modular, the misappropriation of trade secrets and tortious interference with contract claims,

awarding Marlite $312,192.00 for the former and $43,392.50 for the latter, for a total damages award against Modular of $355,584.50. The jury also returned a verdict in favor of Marlite on its breach of contract claim against Eckenrod individually, awarding Marlite $43,392.50 in damages on that claim. The jury rejected Marlite's claim against Modular for breach of contract as well as Modular's counterclaim against Marlite. The Court entered judgment against Marlite on the tortious interference with business relationship claim.

Following the entry of Final Judgment on the jury's verdict, Marlite timely filed a bill of costs [D.E. 217] seeking $42,152.07 in taxable costs from Modular and Eckenrod. Marlite also timely filed a motion for attorneys' fees and expenses [D.E. 234] that sought an additional award of $448,860.55 in attorneys' fees, and $338,739.08 in additional litigation expenses, against Eckenrod only stemming from the provision in the Eckenrod contract with Marlite for reimbursement of "all costs" in enforcing that non-compete agreement. Marlite also filed a supplemental bill of costs [D.E. 237] to add an additional $4,469.40 in taxable costs to the bill of costs already filed.

Defendants oppose the award of fees and costs requested in these motions on various grounds, especially as to the motion for attorneys' fees and expenses filed against Eckenrod, which purportedly seeks fees and costs beyond anything that may be awardable against Eckenrod given the jury's verdict on the one claim against him. Moreover, Defendants oppose the entirety of the bill of costs requested, and object to the consideration of the supplemental amount filed after the thirty-day period provided for under Local Rule 7.3(c).

The Court has reviewed all the submissions relating to these post-judgment matters, including the voluminous records submitted in support of Marlite's fee and expense motion. The Court's review of the record reveals that Marlite is indeed entitled to an award of fees and costs against Eckenrod, and an award of taxable costs against Modular as well, but not for the amounts requested.

## II.  ANALYSIS

A.  *<u>Motion for Attorneys' Fees against Eckenrod</u>*

Marlite's motion for an award of fees is premised on the "all costs" provision of the Eckenrod agreement with Marlite, which provides that Eckenrod will be liable for the costs incurred in the enforcement of the agreement. Eckenrod does not challenge the enforceability of this provision per se under Florida law.[1] Instead, Eckenrod argues that Marlite should not be deemed a prevailing party under the agreement because (as argued in the pending Rule 50 and 59 motions) Marlite did not prove its entitlement to damages for the breach of contract claim against Eckenrod. As such, Marlite did not literally prevail in this action against Eckenrod in order to trigger any right to fees under the contract.

The Court disagrees. For the reasons fully set forth in the Order on these other motions, there is competent substantial evidence that supports the jury's award against both Modular and Eckenrod. And specifically with respect to the $43,392.50

---

[1] The parties agree that in this diversity case Florida law governs our determination on attorney's fees. *See, e.g., Prime Ins. Syndicate, Inc. v. Soil Tech Distribs., Inc.,* 270 Fed.Appx. 962, 963 (11th Cir. 2008) ("We have consistently recognized that in diversity cases a party's right to attorney's fees is determined by reference to state law.").

award against Eckenrod personally, following the Court's summary judgment order on liability, there is ample evidence supporting this award in the record. Consequently, the only objection raised by Eckenrod to Marlite's entitlement to fees in this case fails.

Having found that Marlite is entitled to some award of attorneys' fees based upon the applicable contract provision (PX 38 ("all costs incurred by [Marlite] to enforce this Non-Competition Agreement including reasonable attorney's fees, in the event of an actual breach of the provisions of this . . . Agreement by [Eckenrod]")), we turn to the more difficult question of how much to award in fees given the jury's verdict and the apportionment of liability in the case between the two defendants. Eckenrod opposes the amount requested because the Court should only award those fees that are attributable to the contract claim against Eckenrod, as opposed to the tort claims against Modular (for which no attorneys' fees liability is claimed). Eckenrod also argues that the amount awarded should be significantly reduced for other reasons.

We turn, then, to the amount of fees to be awarded to Marlite for the breach of contract claim against Eckenrod. Marlite seeks $448,860.55 in fees, based on 2265.2 hours of work, divided between out of state and local counsel, at hourly rates ranging from $165 to $270 per hour among paralegals and lawyers. Marlite's motion is supported by affidavits and time records from counsel filed in the record.

Eckenrod primarily objects to the amount sought based upon the limited success obtained in the case and the failure to properly apportion the fees arising directly from the claim against Eckenrod from those against Modular. Eckenrod also objects to the award on other grounds, including counsel's misconduct in the case.

We use the federal "lodestar" method to determine reasonable attorney's fees even in a diversity case governed by Florida law. *See, e.g., Wendell v. USAA Cas. Ins. Co.*, No. 8:08-cv-536-T-23EAJ, 2008 WL 1971451, at *1 (M.D. Fla. July 8, 2009); *Fla. Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150-51 (Fla. 1985) (adopting the federal lodestar approach to set reasonable attorney's fees). The lodestar method consists of determining the reasonable hourly rate, then multiplying that number by the number of hours reasonably expended by counsel. *E.g., Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Hous. Auth. of Montgomergy*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). The applicant seeking fees bears the burden of documenting appropriate hours and hourly rates. *ACLU of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir. 1999). In awarding attorney's fees, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id.* at 428.

### 1. *Reasonable Hourly Rates*

When calculating the lodestar amount, the Court first determines the reasonable hourly rate. The Eleventh Circuit defines the reasonable hourly rate to be the "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman,* 836 F.2d at 1299. Several well-established factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714

(5th Cir. 1974).[2] The party who applies for attorney's fees is responsible for submitting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate. *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates [and] . . . satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). In the end, however, the Court is deemed an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

Based on our review of the case and taking into account the relevant *Johnson* factors, as well as the fact that Eckenrod has lodged no objection to the hourly rates

---

[2] The *Johnson* factors are essentially the same as those outlined in *Rowe,* 472 So. 2d at 1150 n.5. The *Johnson* factors are:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases.

*Johnson,* 488 F.2d at 717-719.

requested per se in the fee application, we find that the hourly rates included in the application are reasonable hourly rates for counsel and paralegal services in the case. They are commensurate with the rates charged in this legal community for similar services by lawyers of reasonably comparable skills, experience and reputation.

### 2. *Hours Reasonably Expended*

The second component of the lodestar method requires the Court to determine the amount of hours reasonably expended by Plaintiffs' attorney. This analysis focuses on the exclusion of hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Georgia,* 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). This means that the "district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court must disallow those hours requested that are excessive and should not be assessed against Defendants. Fee applicants must exercise what the Supreme Court has termed "billing judgment." *ACLU v. Georgia*, 168 F.2d at 428 (quoting *Hensley*, 461 U.S. at 434). Reasonably competent counsel do not bill hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Consequently, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* The burden is upon the applicant for fees to submit detailed documentation that will assist the court in determining the amount

of fees to properly and reasonably award. *ACLU of Georgia,* 168 F.3d at 427. The fee applicant must provide the Court with specific and detailed evidence that will allow the Court to accurately determine the amount of fees to be awarded. *Id.*

At the same time, the party opposing the fee application must satisfy his obligation to provide specific and reasonably precise objections concerning hours that should be excluded. *Id.* In the final analysis, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman,* 836 F.2d at 1301.

Marlite seeks compensation for a substantial number of hours incurred in the prosecution of its case against Eckenrod. Marlite claims to have excised hours directly attributable to non-Eckenrod claims, such as those incurred in defense of Modular's counterclaim or the prosecution of the claims against Canas, but nevertheless includes a substantial amount of hours in the application that could be attributable to both Modular and Eckenrod. Naturally, the claim against Eckenrod is part and parcel of the claims against Modular as they both involve basically the same injurious conduct – the hiring of Canas and the utilization of Canas as a means to obtain Marlite trade secrets to compete unfairly against Marlite. In this general respect, we agree with Marlite that many of the hours incurred in the overall prosecution of the claims against Modular include hours that would directly relate to Eckenrod as well. Under Florida law, and contrary to some of Eckenrod's arguments in opposition, they may be compensable. *See Chodorow v. Moore,* 947 So. 2d 577, 579 (Fla. 4th DCA 2007); *Musselwhite v. Charboneau,* 840 So. 2d 1158 (Fla. 5th DCA 2003).

Our review of the hours charged reveals that most of the hourly services identified in the records could reasonably be applicable to Eckenrod, in addition to Modular. There are certainly some charges, pointed out by Eckenrod, that seem to fall more in the other direction. But the difficulty in doing a line-by-line assessment of this many hours charged in the application is palpable. Many of the descriptions are frankly ambiguous in this regard. The Court concludes, therefore, that Florida law would permit the inclusion of such hours in this application solely against Eckenrod so long as it is not readily clear that they have nothing to do with the claims against him.

The better approach to deal with Eckenrod's legitimate argument – that all the fees charged should not be awarded given the limited nature of the success at trial against him – is to address that issue in the final stage of the award calculation. Once a court properly calculates the lodestar, the court should consider whether the lodestar should be adjusted, upward or downward, based upon a variety of factors including the level of success obtained. *Norman,* 836 F.2d at 1302.

In terms of calculating the lodestar itself, however, which requires an assessment of the number of hours reasonably included in the fee application, we exercise our discretion to include the entirety of the hours requested in the application. We see that the hours charged are reasonably related to the Eckenrod claim, that they are not overly excessive by themselves, and that they were reasonably incurred in the prosecution of a very contentious and complex dispute. The parties litigated forcefully and competently. The trial was well presented. The number of hours that such a

presentation would reasonably require are indeed included in the fee application here. To be sure, we would have no problem awarding the entire number of hours charged to the penny were a fee recovery applicable to both defendants in the case. And especially given the reasonableness of the hourly rates involved here, we conclude that the lodestar, properly calculated, should include the entire amount requested in the application.

In reaching this conclusion, we have considered but rejected other arguments raised in opposition to the number of hours included here by Eckenrod. We do not find that a substantial number of hours should be excluded based upon block billing or vague entries. We do not find that the misconduct cited in the response related to the improper communication post-trial with a member of the jury panel, contrary to the Court's local rules, should affect this calculation to which Marlite is contractually entitled. And we do not find that the general category of hours charged were materially excessive in any respect.

### 3. *Reduction for Limited Success Against Eckenrod*

As stated above, once the lodestar is properly calculated, we should turn to whether a further adjustment is required for the results obtained in the litigation. *Norman,* 836 F.2d at 1302. "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id*. "In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." *Id*. "A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a

whole." *Id.* "[T]he relief plaintiff requested is indeed relevant to determining the extent of that plaintiff's success." *Popham v. City of Kennesaw,* 820 F.2d 1570, 1581 (11th Cir. 1987) (applying 67% reduction to lodestar where $30,000 awarded on $2 million claim).

This issue is whether the rubber meets the road in our view. Though we would award the entire lodestar requested in this case were both defendants on the hook for fees, we must recognize that the level of success obtained here, at least as to Eckenrod, was quite limited. As our Order denying the Rule 50 and 59 motions points out, the jury found Eckenrod personally liable but for only a fraction of the price erosion damages proven at trial. As Eckenrod correctly states, the verdict represents only a 1.4% recovery of the total amount of damages Marlite requested against Eckenrod. When juxtaposed against a 100% attorney's fee award for well over $400,000, it is hard to disagree with Eckenrod that the limited level of success obtained as against him personally warrants a material reduction in the lodestar.

The primary reason why the Court will reduce the lodestar is that the bulk of the legal work involved here was clearly targeted at Modular. Maybe not exclusively, but clearly primarily. That fact would have justified a more careful line by line exclusion of hours charged against Eckenrod. But as we pointed out before, we chose in our discretion to address the issue on a more global basis – by looking to this final stage of the process to achieve a truly reasonable fee under the circumstances. And given the limited nature of the award against Eckenrod, to award as a fee an amount

more than 10 times greater than that is clearly unreasonable given the results obtained.

That leads to the difficult question of discerning the correct percentage to reduce the lodestar and achieve a truly reasonable fee as against Eckenrod. We begin with the recognition that the majority of the legal work incurred was focused on Modular as a whole, rather than specifically Eckenrod – a fact that is difficult for Marlite to dispute given the descriptions of the work performed. We add to that the fact that the jury awarded Marlite as against Eckenrod one-half of the damage that Marlite's CFO determined to be attributable to the hiring of America Canas for the relevant time period. And we add to that the fact that the jury rejected a substantial monetary award, as against both Modular and Eckenrod.

These considerations lead us to conclude that a substantial reduction in the lodestar is appropriate. For guidance, we consider the Eleventh Circuit decision in *Popham,* which involved substantially more important claims to the public in a civil rights case. The plaintiff there recovered only a fraction of what was demanded. Even though the jury's verdict reaffirmed the constitutional principles at stake, a fact that yields greater support for a substantially greater fee award, the district court and court of appeals concluded that a 67% reduction was warranted. 820 F.2d at 1581.

By that measure, in a case with significantly fewer public interests involved, one could argue that an even greater reduction should be made. But on the other hand we believe there is a public interest that is furthered by enforcing the principles of contract against parties who would breach such obligations for the sake of financial

gain. A greater reduction in the fee here would undermine the public interest that is involved in a case like this, and diminish the incentive for competent lawyers to take on such a case. Moreover, the difficulty in proving damages in a complex commercial cannot be overestimated. Proving the types of damages at issue here is indeed difficult and, again, requires competent counsel to pursue.

Therefore, we believe that all the equitable and legal factors at play require at least the same level of across-the-board reduction that was upheld in *Popham*. We will thus reduce the lodestar calculation by 67% to better achieve a truly reasonable fee in this case, given the fact that only one individual defendant is liable for attorneys' fees and because the jury's award was a fraction of what was demanded as against that individual defendant. Reasonable people could arrive at different calculations. A 67% reduction is the end result of our attempt at achieving a fair and just calculation upon our review of this record.[3]

B.   *Motion for Award of Expenses and Bill of Costs*

In diversity cases, federal law controls the award of costs. *See, e.g., Eugene v. 3Don & Partner Estate Group, LLC*, 2009 WL 996016, at *12 (S.D. Fla. April 14, 2009); *Barnaby v. E.F. Hutton & Co.,* 130 F.R.D. 679, 683-84 (M.D. Fla. 1990); *see also*

---

[3] We note that Marlite also included a tag-along argument in its motion seeking greater attorneys' fees against Eckenrod for vexatious litigation under 28 U.S.C. § 1927. That argument merits little discussion. The Court's review of the record as a whole reveals no persuasive evidence of reckless or bad faith litigation on any party's side. The defense of the case was not unreasonable at least as to the damages side of the case. And though the prosecution of the counterclaim by Modular is rather dubious, the jury's verdict sufficiently takes care of that issue without the need for any further relief from the Court. Section 1927, in short, has no application here.

*Humann v. KEM Elec. Co-op, Inc.,* 497 F.3d 810, 813 (8th Cir. 2007). This principle of law controls the outcome of most of the disputed issues in this case relating to the award of costs requested in these motions.

Under Fed. R. Civ. P. 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute. A strong presumption exists in favor of awarding costs. *Eugene,* 2009 WL 996016, at *12. A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920.[4] *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920).

The motion for fees and expenses includes a request for reimbursement of $338,739.08 in various litigation expenses as against Eckenrod, *in addition* to $46,801.47 included in the original and supplemental bill of costs filed by Marlite, awardable purely under section 1920 as against both Eckenrod and Modular. Those expenses include expert witness fees, mediation fees, investigative fees, computerized legal research, etc., which are all indisputably not awardable under section 1920.

---

[4]   The following costs are permitted under 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under 28 U.S.C. § 1923;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

Eckenrod naturally objects to this demand, arguing primarily that they are not awardable except as provided in section 1920. Eckenrod and Modular also raise various specific arguments on various costs that are awardable under the statute. And they both take issue with the premise of the motion for expenses and bill of costs – that Marlite prevailed in this action because both parties prevailed.[5]

Turning to the most persuasive argument raised in opposition, we agree with Eckenrod that the extent of the expenses requested in the motion for fees cannot be awarded. This case is governed by Rule 54 and section 1920. Expert witness hourly fees, attorney travel expenses, investigative fees, computer research, postage, jury consultant fees, are not expressly included in section 1920 and are thus not taxable even in a diversity case. That is true even where a contract provision includes an "all costs" provision like this one. Only a state statute that required an award of a specific cost can allow a federal court in diversity to award additional costs. *See, e.g., Henning v. Lake Charles Harbor and Terminal Dist.,* 387 F.2d 264, 267 (5th Cir. 1968). There is no similar state statute here that applies as substantive law to overcome the general rule. Marlite has indeed cited no authority for the proposition that costs like these may be awarded in a breach of contract case sitting in diversity.

That then leads to the bill of costs, as supplemented, filed by Marlite as against both Modular and Eckenrod. Our review of the record, including the supporting

---

[5] That latter argument is specious, given the substantial record in this case which supports the jury's verdict against both defendants. And though we agree that we could decline to award even section 1920 costs, the proper exercise of discretion in this case yields the opposite conclusion: that costs should be awarded against both defendants but only to the maximum extent permissible by the statute.

materials submitted for the costs requested, shows that the bill of costs should be granted in part, including the supplemental bill of costs for an additional certified transcript of the trial.[6]

Though Defendants challenge various of the amounts included in the bills of costs, we find that all the costs requested are taxable under section 1920 except as follows. First, the Court agrees that section 1920 allows for recovery of only those costs incurred during this particular litigation. Costs that may have been incurred in litigation with Ms. Canas prior to the filing of this action are not recoverable here. The bill of costs includes various expenses, totaling $2,760.62, that directly relate to that predecessor action, and shall be deducted from the amount awarded.

Second, the Court agrees that courier and postage fees, even if necessary for the presentation of exhibits at trial, are not recoverable under section 1920. The bill of costs includes $2,469.64 in courier and postage/handling charges that must also be deducted from the award.

Third, although subsistence fees can be added to witness fees for out-of-town *trial* witnesses under section 1920, the Court finds that the amount requested must be reduced for excessive charges and charges that relate to depositions as opposed to trial. The Court will reduce the amount awarded by $3,208.32 for excess witness fee charges included in the bill of costs.

---

[6] Defendants object to the supplement because it was not timely filed, as per Local Rule 5.4(c). But because the original bill of costs was timely, and based upon the absence of prejudice to the Defendants, we choose to exercise our discretion to permit the late filing of this supplement so that it may be included within the Court's consideration of the original timely bill of costs.

Fourth, charges included in the bill of costs for the preparation of exhibits used at trial (as opposed to exemplification of certain exhibits) are not recoverable under section 1920, as they are primarily incurred for the convenience of counsel. To the extent that exhibits were copied and prepared for trial, the Court is already including the full amount of copying costs requested on a separate line item. But the indexing or presentation costs for exhibits are not reimbursable. Therefore, the Court will reduce those amounts, totalling $5,797.96, from the costs awarded.

Finally, the Court agrees that technology costs, like projector rental fees, even if necessary for trial are not recoverable under any provision of section 1920. The Court must thus excise the $1,298.50 requested in the bill of costs for those expenses.

To the extent Defendants have other objections to any amounts not discussed above, the Court in the exercise of its discretion rejects those objections and finds that the other amounts requested in the bill of costs are fully recoverable under section 1920. Accordingly, the Court will grant the motion for expenses and bill of costs but only for a total amount of $31,266.43.

### III.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Marlite, Inc.'s Motion for Attorneys' Fees and Expenses [D.E. 234] is **GRANTED** in part and **DENIED** in part.

2. Plaintiff Marlite, Inc.'s Bill of Costs [D.E. 217] and Supplemental Bill of Costs [D.E. 237] are **APPROVED** in part and **DISALLOWED** in part.

3. An amended final judgment shall be separately entered that will award Marlite $148,123.98 in recoverable attorneys' fees as against Defendant Alvin Eckenrod, pursuant to the judgment in Marlite's favor on Count Eight of the Amended Complaint.

4. An amended final judgment shall be separately entered that will award Marlite $31,266.43 in taxable costs as against Defendants Alvin Eckenrod and Modular Wood Systems, Inc., jointly and severally.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of January, 2011.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge